**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEAN MOORE | : | |
| v. | : | NO. 23-CV-3087 SWR |
| RESTORE INTEGRATIVE WELLNESS CENTER, et al. | : | |

# O P I N I O N

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE

DATE: September 1, 2026

Plaintiff Sean Moore ("Moore") brought this action against his former employer, Restore Integrative Wellness Center ("Restore") alleging discrimination and retaliation in violation of the Americans with Disability Act of 1990 ("ADA")[1], 42 U.S.C. §12112, and violation of his rights and retaliation under the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. §2601. He also asserted counts for disability discrimination and retaliation under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. S.A. §951 *et seq*.

This case was tried before a jury on May 11 and 12, 2026. At the close of Moore's case, Restore moved for judgment as a matter of law under Fed. R. Civ. Pr. 50(a). *Trial Transcript*, May 12, 2026, at 43:9. This motion was granted in part, and both retaliation claims were dismissed. *Id*. at 67. On May 12, 2026, the jury returned a verdict in favor of Moore on all counts. *Id*. at 159:19-161:3. Defendant now renews its motion for judgment as a matter of law under Fed. R. Civ. Pr. 50(b). It, too, will be granted in part and denied in part.

[1] As of January 1, 2009, the ADA is supplemented by the ADA Amendments Act of 2008 ("ADAA"), References herein to ADA may refer to material set forth in the ADAAA.

I. *Factual Background*

As of June 1, 2022, Moore was employed as the general manager of a marijuana dispensary operated by Restore. *Trial Transcript*, May 11, 2026, at 31:11-17 (Testimony of Sean Moore). On June 1, 2022, however, he sustained injuries in a motor vehicle accident. *Id*. at 32:25-33:6. According to Moore, he suffered from a sprained neck, neuropathy, torticollis, and bulging discs in his spine. *Id*. at 33:13-15.

Moore notified Rebecca ("Becky") Koval, an operations director for Restore, that he would need some time off to recover from his injuries. *Id*. at 33:25-34:7, *Trial Transcript*, May 12, 2026, at 76:7-9 (Testimony of Rebecca Koval). After Moore took some days of personal leave, Koval referred him to Jim Bonner, Restore's "Director of People and Culture" who advised him to complete paperwork for FMLA leave. *Trial Transcript*, May 11, 2026, at 34:13-22.

On June 21, 2022, Moore forwarded to Frankie Koon, a human relations specialist for Restore, an FMLA certification form attached to the following note:

> Attached is the paperwork from my primary care physician. I will reach out next Monday when I have a clearer prognosis and treatment plan from my neurosurgeon. I am terribly sorry this has happened and I miss dispensing happiness.

Trial Exhibit P-1. On the attached form, it is typed in that certification was requested by Restore on June 17, 2022, and that: "The medical certification must be returned by July 2, 2022." *Id*. This form was stamped by Hang Nguyen, D.O., and reflects that Moore's condition began on June 1, 2022, but does not give an estimate as to how long the condition would last, stating instead: "When patient sees neurologist." *Id*.

According to Moore, Frankie Koon asked him to provide "additional dates." *Trial Transcript*, May 11, 2026, at 41:14-42:2. Moore testified that this was problematic because the doctor who filled out the form was now out of the country. *Id*. at 42:8-12. Frankie Koon extended the due date for the paperwork until July 15, 2022. *Id*. at 42:13-17.

A form dated July 13, 2022, was completed by a neurologist whose name is given as "Dr. Allen." *Trial Exhibit* P-2. He indicated that Moore's incapacitating condition started on June 7, 2022, and was estimated to end on September 10, 2022. *Id*. Emails indicate that Moore sent the form to Frankie Koon on July 15, 2022. *Trial Exhibit* P-3. Moore's FMLA leave was approved. *Trial Transcript*, May 11, 2026, at 49:17-20.

Later in the day on July 15, 2022, Jim Bonner wrote:

> Thanks, Sean,
>
> Being the "process guy" is unpopular and daunting sometimes, but now with the right documentation, you are legally protected to stay home and recover through your leave without threat to your position, schedule, or salary. This is why the small documentation details are so important. My being picky was on your behalf, not against you! I hope you know this.
>
> Wishing you a good, healthy recovery. If things go bad, please let me know, reach out to Rob or Becky ... we are all here for our own. [Smiley face emoji]

*Trial Exhibit* P-3 at Bates Stamp 000059.

Moore testified that, in July, he began inquiring what the procedure was for him to return to work. *Trial Transcript*, May 11, 2026, at 51:1-6. In August, Frankie Koon told him he would need to return a Fitness for Duty certification to return. *Id*. at 51:12-16.

An interchange of emails between Moore and Rebecca Koval dated August 17 and 18, 2022 has Moore writing:

> Hey Becky,
> Good morning I hope all is well, I wanted to reach out and apologize for letting everyone down. These last months have been very trying for me, I feel like I failed you and my team. I used this as motivation to get my self to 100%. The time has come for the next step in my treatment and that will be cervical surgery. I had reached out to Jim to start the return process and wanted to let you know that I will be returning in the next 2 weeks pending my physical. I'm excited and anxious about this but getting back to helping people and coworkers have been motivating. Would it be appropriate for me the [*sic* "to"] ride out to store to say hi and get charger.
> Thanks and I look forward to working with you all.
> Sean

*Trial Exhibit* P-7 at 2 (formatting in original).

Koval responded:

> Hi Sean,
>
> Hope all is well! Thank you, again, for reaching out to me yesterday! I was able to get caught up a bit today and wanted to follow up to your previous email.
>
> It's my understanding that Jim and Frankie from HR are awaiting some follow up documents from your doctor's appointment. I can't allow you to come back to work until all the paperwork has been submitted and you are cleared to work with no restrictions. Until that happens, please refrain from going back to work. We are excited for your return as well! We just need to make sure we have all the proper t's crossed and i's dotted. Hope the recovery has been going great for you! Thank you for your understanding in these matters!
>
> Best,
> Becky

*Id*. at 1-2. She testified at trial that she understood the "charger" Moore wanted to be the charger for the company laptop, which he would need only for work. *Trial Transcript*, May 12, 2026, at 81:12-16.

Moore wrote back:

> Thank you I understand, it is all pending a physical. I just wanted to take a ride out to make a purchase and say hi but I won't but I understand the liability. Thanks for getting back to me my recovery has been pretty good I will have to take some medications for the nerve damage but I'm a survivor.

*Id*. at 1.

A Dr. John P. Weaver completed a Fitness for Duty Certification form, dated September 6, 2022. *Trial Exhibit* P-4. Moore testified that Dr. Weaver was a family physician. *Trial Transcript*, May 12, 2026, at 19:6. Moore sent the Certification to Jim Bonner and Frankie Koon the same day. *Trial Transcript*, May 11, 2026, at 53:6-14. However, the form did not purport to clear Moore for work.

Initially, Dr. Weaver checked off that Moore was fit to return to "Modified duty, effective August 3, 2022." *Exhibit* P-4. A line was drawn through that response, however, and the word "Error" appears by it, with the initials JPW. *Id*. Below that line is a handwritten list of restrictions which is not stricken out. It reads: "No lifting >10#; Avoid looking up above eye level; Avoid work with head turned to one side; Change positions frequently; Avoid having an awkward lift." *Id*.

Moreover, further down on the form, Dr. Weaver checked off a box that said: "The employee is not released to work." *Id*. There is no mark at all near the box where it said "full/unrestricted duty." *Id*.

According to Moore, he noticed the "little scribble" that said "error" just as he was sending the form to Restore, and alerted Jim Bonner to the issue. *Trial Transcript*, May 11, 2026, at 53:22-54:3. Moore testified that Jim Bonner told him to get a "corrected version." *Id*. at 54:4-5. When asked to clarify his testimony, however, Moore said that Jim Bonner "instructed [him] to get a better cert to return." *Id*. at 56:9-10.

Jim Bonner did not appear as a witness at trial, so there was no further explanation of this interaction. Rebecca Koval testified that Jim Bonner "probably" showed her the paperwork and let her know that "as of 9/6 [Moore]'s not fit to come back to work." *Trial Transcript*, May 12, 2026, at 89:19-24.

The parties agree that Moore sent Restore a second FMLA Fitness for Duty Certification signed by Dr. Weaver and dated September 12, 2022. This form indicated that Moore could return to "full/unrestricted duty," effective September 12, 2022. *Trial Exhibit* P-5. According to Moore, as of that date, he would not have had problems lifting over ten pounds, looking overhead, or turning his head to the side. *Trial Transcript*, May 11, 2026, at 60:6-15.

Moore testified that he emailed the second Fitness for Duty Certification to Jim Bonner on September 12, 2022. *Id*. at 61:2-4. However, this is not confirmed by a dated email, or other material evidence, whereas there is evidence that Moore sent the form to Jim Bonner on September 16, 2022. *Trial Exhibit* P-6 at unpaginated 1-2. Becky Koval testified she saw the form for the first time on September 16, 2022. *Trial Transcript*, May 12, 2026, at 32:15-16. Moore testified that this was the second time he sent the form. *Trial Transcript*, May 11, 2026, at 65:20-66:2.

This lack of clarity as to when Restore saw the second Certification became important at trial because, in an email dated September 14, 2022, at 12:07 p.m., Jim Bonner terminated Moore's employment, stating in relevant part:

> I hope this letter finds you well. You have been absent from work since June 1, 2022 and you have exhausted all available FMLA-type leave of absence. You are not eligible for any additional leave as required by state and federal laws or under any company policy and we are unable to continue accommodating your absence. Regrettably, we must terminate your employment effective 9/14/2022.

*Trial Exhibit* P-6 at unpaginated p. 3.

Moore responded at 12:12: "So my doctor sends my return to work twice and this is response I am given that doesn't make sense." *Id*. Four minutes later he sent another message, ending "I'm not understanding what the grounds of termination are." *Id*.

Jim Bonner wrote back on September 16, 2022, at 5:27 p.m.:

> Thank you for reaching back out. The leave of absence process has been explained in detail through our correspondence and the documentation provided. You have been terminated because you have exceeded the amount of time permitted by FMLA leave, and have not returned an acceptable fitness for duty ... you are still on a total work restriction.
>
> At this time, Restore has chosen to move forward with the operation of the team in a way that does not include maintaining your position and tenure here as your leave time has exhausted. It is not connected to your conduct while you were an active employee, and you are eligible to reapply to any position at Restore that you would be capable of doing and are not medically restricted from participating in.
>
> I am available to discuss further by email or at [phone number].

*Id*. at unpaginated 2-3.

At 5:44 p.m. on September 16, 2022, Moore sent Jim Bonner a copy of the FMLA Fitness for Duty Certification dated September 12, 2022, with the note: "I get it thank you kindly, this should have been more simple I understand. I was unaware of an end date, thanks for ever [*sic*] you all have done wish It would have been different." *Id*. at unpaginated 1-2.

All the September 16, 2022, emails were copied to Rebecca Koval. However, she testified at trial that she was not part of the decision to terminate Moore. *Trial Transcript*, May 12, 2022, at 29:23-25. She testified that Jim Bonner made that decision. *Id*. at 30:1-3.

Moore conceded on cross-examination that he never applied for another position at Restore. *Id*., at 18:14-17. He testified that, in November, 2022, he began working as a technician for Orkin, earning approximately $30,000 per year. *Trial Transcript*, May 11, 2026, at 66:13-20. In May, 2023, he left Orkin and became a supervisor at Trulieve, a marijuana

dispensary. *Id*. at 67:23-68:14. By the time of trial, he was working as a general manager for Trulieve, earning $60,000 per year. *Id*. at 68:15-69:2.

In his closing argument before the jury, Moore's counsel focused on the days between September 6, 2022, when Moore obtained the first Fitness for Duty Certification, and September 16, 2022. *Trial Transcript*, May 12, 2026, at 100:4-6. He primarily argued that Restore should have had a conversation with Moore to clarify the contradictory forms he sent them six days apart, telling the jury that: "[F]rom point to point to point, Restore's focus was on the paperwork and not on the person." *Id*. at 103:11-12. He told the jury:

> [Y]ou can reasonably conclude they [i.e., Restore] perceived him as disabled, that they didn't believe that just six days later, a document showing that he had no medical restrictions was true. They perceived him – they believed him to be a disabled individual and made a hiring or termination decision based on that.

*Trial Transcript*, May 12, 2026, at 104:4-9.

Restore's counsel focused in closing on every action Restore took to retain and accommodate Moore, by making sure he submitted the correct forms to obtain FMLA leave, and extending his deadlines when necessary. *Id*. at 109:5-25. He specified that the period of Moore's FMLA leave ran from June 7 to September 10, 2022. *Id*. at 110:7-10. Counsel argued that Restore terminated Moore on September 14, 2022, because his twelve weeks of FMLA leave had expired, and the only form they had from Moore on that day was the September 6, 2022, certification which indicated that he could not yet return to work. *Id*. at 111:18-112:14. Restore received the second certification only on September 16, 2022, according to counsel. *Id*. at 112:15-113:15. As to the ADA, counsel pointed out that Moore never requested an accommodation. *Id*. at 116:4-6.

As noted above, however, the jury ruled in favor of Moore on every claim, awarding him $25,000 in damages, and $78,500 in backpay. *Trial Transcript*, May 12, 2026 at 160:9-15. It also awarded him punitive damages in the amount of $100,000. *Id.* at 160:16-24.

II. *Relevant Legal Principles*

A. *Rule 50(b)*

Under Fed. R. Civ. Pr. 50(b), a party may renew after trial a motion for judgment as a matter of law that it raised after the opposing party's case earlier, under Fed. R. Civ. Pr. 50(a). Under either subsection of Fed. R. Civ. Pr. 50, a motion for judgment as a matter of law should be granted only if, viewing the evidence in the light most favorable to the nonmovant, and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury could reasonably find liability. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version. *Id*. Rather, the issue for the court in a Rule 50(b) motion is whether the verdict reached by the jury is or is not supported by legally sufficient evidence. *Id*.

B. *FMLA Restoration to Position*

As summarized by the Honorable Robert F. Kelly:

> The FMLA provides eligible employees with the right to take up to twelve weeks of unpaid leave, as well as protection from discrimination for exercising that right. *See Panto v. Palmer Dialysis Ctr./Total Renal Care*, No. 01-6013, 2003 WL 1818990, at *6 (E.D. Pa. Apr. 7, 2003) (citing *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) ).

*Losota v. Child Guidance Res. Centers, Inc.*, Civ. A. No. 18-696, 2018 WL 3618244 at *2 (E.D. Pa. July 27, 2018).

Upon returning from FMLA leave, an employee has the right to be restored by the employer to the position held at the time leave commenced, or to an equivalent position. 29 U.S.C. §2614. An exception to this rule exists where, at the end of the FMLA leave, the employee remains unable to perform an essential function of the position because of the continuation of a serious health condition. *Id*. In that case, the employer is not obligated to find a position for the employee. *Id*.

C. *Discrimination under the ADA and the PHRA*

The ADA precludes a covered employer from discriminating against a qualified individual on the basis of disability regarding job applications, hiring, advancement, discharge, compensation, training, or any other term, condition or privilege of employment. 42 U.S.C. §12112. Similarly, a person who is regarded as having a disability, whether or not one exists, is protected by the ADA. 42 U.S.C. § 12102(3)(A).

The Third Circuit interprets PHRA discrimination claims under the same standard as ADA claims. *Smondrowski v. Edgewood Co., Inc.*, Civ. A. No. 24-1297, 2025 WL 3678885 (E.D. Pa. Dec. 18, 2025) at *3, *citing Larochelle v. Wilmac Corp.*, 769 Fed. App'x 57, 65 (3d Cir. 2019) (ADA and PHRA claims contain same elements and are evaluated using same standard), and *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016).

D. *Punitive Damages Under the ADA*

Punitive damages are not available under FMLA or the PHRA. *See DeCicco v. Mid-Atlantic Healthcare, LLC*, Civ. A. No. 14-2933, 275 F. Supp.3d 546, 564 (E.D. Pa. Jul. 27, 2017). However, they are available under the ADA when the plaintiff demonstrates that the defendant engaged in a discriminatory practice with malice or reckless indifference. 42 U.S.C. §1981(a)(1); *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 573 (3d Cir. 2002).

Nevertheless, the United States Supreme Court has determined that an excessive punitive damage award can violate due process. *BMW of North America v. Gore*, 517 U.S. 559 (1996). Under *Gore*, a court determining whether an award of punitive damages is excessive will consider both the degree of reprehensibility of the defendant's misconduct, and the disparity between the actual or potential damages suffered by the plaintiff and the punitive damages award. 517 U.S. at 575, 582.

III. *Discussion*

A. *FMLA Interference*

Restore argues that the jury's verdict in favor of Moore on FMLA interference fails as a matter of law because Moore was allowed the twelve weeks of unpaid leave to which he was entitled under that law. Restore adds that Moore did not have a right to return to his position because he was unable to return to work when his FMLA leave was exhausted. It relies upon the September 6, 2022, Fitness for Duty Certification.

First, it is clear that Moore's case relied upon his having been deprived of his FMLA right to restoration, and not upon a claim that he did not receive twelve weeks of leave. Moore's counsel never questioned in his closing the number of weeks of leave he was provided. *See Trial Transcript*, May 12, 2026, at 108-116. Secondly, it is clear from the above discussion of the case that the issue of whether Moore was able to return to work on September 10, 2022, was disputed at trial, with each party looking to a different Fitness for Duty Certification.

Although there appeared to be some uncertainty at trial as to Moore's leave dates, Restore's lawyer ultimately affirmed in closing that those dates were June 7 through September 10, 2022. *Trial Transcript*, May 12, 2026, at 110:7-10. This corresponded with the dates set

forth on the FMLA Certification form signed by Dr. Allen, which Moore forwarded to Frankie Koon on July 15, 2022. *Trial Exhibit* P-2.

However, the parties disagreed as to whether Restore received the second Fitness for Duty Certification, dated September 12, 2022, before it terminated Moore's employment. As defense counsel pointed out in closing, some evidence, such as the absence of an email dated September 12, 2022, tended to support Restore's suggestion that it did not receive the second Fitness for Duty Certification until September 16, 2022. *See Trial Transcript*, May 12, 2026, at 112:15-113:15. Nevertheless, no evidence directly contradicted Moore's testimony on this point. For example, Jim Bonner was not at trial and could not testify as to when he first received the second Certification, and his email records were not produced.

Thus, the jury was free to believe Moore's testimony, and reject Restore's position that Moore was legitimately terminated because he did not provide a timely clearance. Giving Moore the advantage of every fair and reasonable inference, as the Court must do under Rule 50(b), it is impossible to say that the jury's conclusion that Restore violated Moore's right to restoration to his position was unsupported by legally sufficient evidence.

Further, having decided that Restore violated FMLA in failing to restore Moore to his position, the jury was entitled to find that Moore was prejudiced thereby. Moore testified that he was unemployed for two months, and then earned a much lower salary than he had at Restore for several years. *Trial Transcript*, May 11, 2026, at 66:13-69:2. Accordingly, Restore's motion must be denied regarding this claim.

B. *Punitive Damages*

As above, the jury awarded Moore punitive damages in the amount of $100,000. *Trial Transcript*, May 12, 2026 at 160:16-24. Restore argues that there was no legal basis for such an award because it clearly failed to act with malice or reckless indifference to its legal responsibilities.

Restore, however, fails to make a coherent argument in this regard. First, it argues that it "had no perceived risk that complying with the FMLA's twelve-week requirement, and terminating Plaintiff only after that leave was exhausted, would violate federal law." Yet, punitive damages are not available under FMLA, so it is not Restore's actions regarding FMLA which are at issue, but its actions or failures to act with respect to the ADA.

Then, Restore maintains that punitive damages should not have been awarded under the ADA pursuant to Moore's theory that it regarded him as disabled:

> Here, the unrebutted evidence is that Restore did not perceive Plaintiff as impaired at all: Plaintiff disclaimed any disability, his own primary-care and neurologist physicians cleared him to return to work, and Restore acted on that clearance. An employer that receives medical confirmation [that] an employee may return to work, and then ends his employment only because his FMLA leave is exhausted, does not act "in the face of a perceived risk that its actions will violate" the ADA. [Citing *Gagliardo*].

*Defendant's Memorandum of Law in Support of its Motion under Fed. R. Civ. Pr. 50(b)* at 8. This argument is both factually erroneous and logically untenable.

As to the facts, Moore's neurologist did not "clear him to return to work." The only form submitted by a neurologist, Dr. Allen, was the July 13, 2022, FMLA certification which set forth the estimated length of Moore's inability to work but could not speak to his specific condition on September 10, 2022, since the form was authored two months earlier. *Trial Exhibit* P-2. The two Fitness for Duty Certifications were signed by general practitioner Dr. Weaver.

More strikingly, Restore is here claiming to have terminated Moore on September 14, 2022, "acting on" the September 12, 2022, Fitness for Duty Certification which it argued vigorously at trial that it never saw until September 16, 2022. This is not logically possible. Neither Jim Bonner nor anyone else at Restore could have *seen* the form by September 14, 2022, for purposes of the ADA, and *not seen* it under FMLA.

Moreover, Jim Bonner specified in his September 16, 2022, email responding to Moore: "You have been terminated because you have exceeded the amount of time permitted by FMLA leave, *and have not returned an acceptable fitness for duty ... you are still on a total work restriction*." *Trial Exhibit* P-6 at unnumbered p. 3. (Emphasis provided). Having made this representation, it is not credible that Restore acted without fear of a "perceived risk that its actions will violate" the ADA because it recognized and accepted that Moore was cleared to work as of the day he was terminated.

As above, Moore's counsel suggested in closing that Restore saw the September 12, 2022, Fitness for Duty Certification on the day it was issued, but suspected that Moore remained limited in the ways set forth on the September 6, 2022, certification, and terminated his employment because of this. *Trial Transcript*, May 12, 2026, at 104:4-9. This argument has at least the virtue of being logically possible. It may be the version of the facts accepted by the jury. This would meet the standard for an award of punitive damages under the ADA.

C. *The Damages Cap*

Finally, Restore points out that, under the ADA, the sum of a plaintiff's future pecuniary losses, emotional distress damages and other non-pecuniary damages, and punitive damages, is capped at $100,000 for a business of the size of Restore. 42 U.S.C. §12117(a), 1981a(b)(3)(B).

The $78,000 awarded to Moore as backpay is not subject to the cap. 42 U.S.C. §1981(b)(2). Neither is whatever part of the $25,000 damages award is attributable to future earnings under the ADA.[2] *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848 (2001). However, it is not practically possible to determine which part of the $25,000 award represents future earnings, or – of that amount, if it could be determined – how much can be attributed to the ADA rather than FMLA (which has no damages cap).

At the same time, all $100,000 of the punitive damages award is attributable to the ADA, because punitive damages are not recoverable under FMLA or the PHRA. *DeCicco*, *supra*, at 275 F. Supp.3d 564. Thus, the logical way to reduce the award to Moore to avoid exceeding the damage cap is to reduce the amount of the punitive damages award by an amount up to or including $25,000.

I will reduce the punitive damages award to $75,000, subtracting the entire $25,000. This is to avoid exceeding the §1981(b)(3)(B) damages cap. However, it also acknowledges that, under *Gore*, the amount of punitive damages awarded by the jury could be considered excessive. Clearly, Moore put Restore in a difficult and confusing situation by submitting two diametrically opposed Fitness for Duty Certification forms within one week. Assuming that Restore received the second form before it terminated Moore's employment – as the jury apparently found – it would have been difficult for Restore to know the best way to move forward with an employee who was on one day certified to be unable to return to work based on substantial physical restrictions, yet was certified free of all restrictions only six days later.

---

[2] The $25,000 was awarded in response to this question on the verdict sheet: "What amount do you award Sean Moore for emotional distress, mental anguish, and/or loss of enjoyment of life and/or future earnings?" *Trial Transcript*, May 12, 2026, at 160:9-12.

Added to this, according to Moore's own testimony, he specifically asked Jim Bonner to disregard the first Fitness for Duty Certification as erroneous. *Trial Transcript*, May 11, 2026, at 53:22-54:3. This, even though it is clear from the form itself that the individual who completed it corrected the "error" by striking out the finding that Moore was fit for "modified duty," and checking off instead that he was "not released to return to work." *Trial Exhibit* P-4. Without any testimony from Jim Bonner, it is impossible to know whether he accepted Moore's representation that there was an error on the first form, or whether, when he "instructed [Moore] to get a better cert to return," he simply meant that Moore could not return to duty based on a Certification which said he could not work. *See Trial Transcript* May 11, 2026, at 56:9-10.

Given Moore's inconsistent and possibly disingenuous manner of communicating with Restore, it is not possible to conclude that the degree of Restore's reprehensibility was so high as to warrant a punitive damages award which closely approached the amount of Moore's actual damages.

IV. *Conclusion*

Based on the foregoing, Restore's motion under Fed. R. Civ. Pr. 50(b) will be GRANTED IN PART and DENIED IN PART as described above and in my Order of this date.

BY THE COURT:

*/s/ Scott W. Reid*

SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE